W. H. RUNNION and others v. M. J. RAMSAY and others.

*Practice—Petition to Rehear—Parol Trust.*

1. Equity suits pending at the adoption of the Code and transferred to the superior court docket, should be tried and conducted up to final judgment, according to the old rules of equity procedure.

2. Under the old system, a petition to rehear was the proper mode of assailing a preliminary decree for irregularity.

3. The parties plaintiff to the decree attacked, alleged that their ancestor and the ancestor of the defendants had made a parol agreement to purchase jointly a tract of land and share the expenses of improving the same ; and that defendants' ancestor had taken title to himself alone, although payments and improvements on the land had been made by both parties ; the defendants denied the agreement for a joint purchase and the payments and improvements by the plaintiffs' ancestor ; *Held*, that a decree directing an account to be taken of the payments and improvements, and, *at the same time*, declaring a trust in favor of the plaintiffs, is irregular and improper, and will be vacated on a petition to rehear.

RUNNION v. RAMSAY.

MOTION to vacate an Order heard at November Special Term, 1878, of MADISON Superior Court, before *Avery, J.*

This litigation was begun by a bill in equity, under our old system, to fall term, 1867, of the superior court of law and equity of Madison county, and from the pleadings the case was, that William Ramsay and A. J. Ramsay, his son, about 1856, agreed by parol to buy the tract of land, described in the bill, at clerk and master's sale and pay for the same equally, and make improvements thereon at their equal expense and be equal owners thereof. It is alleged that each party made payments toward the purchase money and in the erection of a saw mill on the premises. Both of them died—A. J. Ramsay in 1858, leaving the defendants, his widow and heirs at law, and William Ramsay in 1859, leaving the plaintiffs and the defendants, except M. J. Ramsay, his heirs at law. At the time of their deaths the purchase money had not all been paid and no title executed for the land. Since then the defendants, the widow and heirs at law of A. J. Ramsay, have paid the balance due of the purchase money and taken the legal title in their names, and they claim to be solely entitled to the land.

The prayer of the bill is to have an account taken of the payments towards the original purchase money and expenses in making improvements on the land by each of the parties, for a declaration of trust of the legal title for their benefit in one half of the land, less the share in said half of the defendants as representing A. J. Ramsay, and for a decree of sale of the whole tract and a division of the proceeds according to the respective rights of the parties. The defendants resisted the claim of the plaintiffs upon the allegation that their ancestor, A. J. Ramsay, purchased the land for himself alone, and made all the payments thereon except what defendants have paid since his death; and made the improvements at his own expense, except those the defendants say they have made. The defendants

deny all interest of William Ramsay in the land and all payments claimed to have been made by him, or if any shall have been made by him, they say it was done by William Ramsay in the way of advancement in life of their father, and with no intent to have or claim any joint ownership of the land with A. J. Ramsay. To fortify them in such, their position, they aver that A. J. Ramsay took and held sole possession to his death, and his widow and children have held possession and paid up the balance of the purchase money since his death.

The heirs at law of A. J. Ramsay were all infants at the institution of this suit, and defence was made in their names and for them by S. V. Pickens as their guardian up to fall term, 1872, of the court, when it appearing that Pickens was not the guardian, M. J. Ramsay, the mother of the infants, who by this time had become their guardian, was allowed to file an answer for herself and the infants. Thereupon proofs were taken, and at fall term, 1876, the cause was heard and a decree therein made; and afterwards at fall term, 1878, the defendants, all of them by this time having arrived at full age, except one, presented a petition to rehear and vacate the decree made at fall term, 1876, and on the rehearing His Honor set aside the said decree and let in the defendants to make defence in their proper persons, and from this order of the judge setting aside the decree at fall term, 1876, the appeal is taken.

*Messrs. T. F. Davidson* and *Gilliam & Gatling*, for plantiffs.
*Messrs. J. H. Merrimon* and *C. M. McLoud*, for defendants.

DILLARD, J. (After stating the case.) The appeal presents for our determination two questions—first, was it competent to the judge, on a petition to rehear, to set aside the decree made at the fall term, 1876, and if so, then second, was

it error to set it aside on the declarations therein contained and the other facts appearing in the record.

1. This being a suit pending at the adoption of the code, it was directed to be transferred to the docket of the superior court. C. C. P. § 400. And being so transferred, it was provided it should be tried under the existing laws and rules applicable thereto up to final judgment. C. C. P. § 403. The existing law and rules of practice in this state, referred to in said section of the code, for the review or rehearing of decrees in the court of equity, were the same as in the English chancery; and according to that system, it was by bill of review after final decree enrolled, and on petition to re hear in case of any interlocutory or other decree defined to be preliminary; and therefore by authority of C. C. P. § 403, it was admissible for the judge on the petition to rehear, to reverse or modify the decree of fall term, 1876, in this case, if the same was other than final.

A final decree, called a decree on further direction, is one which ultimately disposes of a suit; and a decree preliminary is one which provides for the investigation of matter material either in determining on subsequent steps in the cause, or in deciding the real issue between the parties. Adams' Eq., 375. A scrutiny of the decree sought to be reversed and put out of the way will show, in the light of this definition, that the same, although in terms larger, is in legal effect at most only a preliminary decree, and therefore reviewable on a petition to rehear.

The prayer of the bill is for a decree holding defendants as affected with a trust of the legal title in favor of the plaintiffs to the extent of a moiety of the land in the bill mentioned, or if not so far, then *pro tanto* any payments William Ramsay paid towards the purchase money. The defendants having denied a joint purchase and any payments made at all by the father, or if any, having averred that he made them in advancement of A. J. Ramsay in life,

it was material as preliminary to the raising of a trust by construction of a court of equity, and as fixing the extent of such trust, in the first place, to know whether the purchase was made by the son in his name with a right in the father to pay one-half and thereby to become the owner of one-half, and if so, then how much he paid, and whether paid as a loan or an advancement of the son.

Clearly a court of equity regarding assistance to a son by a father as within his parental duty, would not imply and by its decree enforce any trust in favor of the heirs of William Ramsay in this suit, if the proof showed in rebuttal thereof that he made payments merely to assist his son, A. J. Ramsay, and with the expectation and design that he or his heirs should take and keep the title. Adams' Eq., 101, 102. Therefore it was obviously material, if not indispensable, to the decision of the real issue between the parties, to know what, if anything, was paid, and with what intent paid, before there could be any decree declaring the trust and determining the extent thereof. On examining the decree of fall term, 1876, it will appear that His Honor in his decree adjudged a tenancy in common to exist, and ordered a sale of the land for division, in the same decree, in which he ordered an account of the payments made ; and thus in effect, he concluded the defendants in respect of their title to one-half of the land, and adjudged a sale of the other half without their consent, when upon the results of an inquiry into the payments made and the purpose thereof, it might turn out that in law no trust ought to be declared. Suppose, on taking the account, it was disclosed as a fact that Wm. Ramsay had paid nothing on the land, or if he had, he paid it as an advancement; then, after the sale of the land and an adjudication that plaintiffs were owners in common, how could he decree half the money to plaintiffs whose ancestor paid nothing towards the land, or if he did, it was done with the intention of a gift to the son. Thus it

is seen that the decree as entered is entitled to be considered as erroneous in law, and of no greater effect than merely an order of account.

2. It háving been seen that the decree was preliminary merely, and therefore within the competency of the court on a petition to rehear to set it aside, it remains to inquire as to the legal propriety of the decree His Honor Judge Avery made, and in doing so it is proper to have regard to the facts set out in his decree and all others in the record.

It is settled law that if A. J. Ramsay agreed, even by parol, to buy and did buy the land for himself and his father, and they both made payments thereon and incurred expenditures in its improvement with intention to be joint owners, and after their deaths the heirs of A. J. Ramsay made the last payment and took the title for the whole, equity will, by construction, hold defendants trustees *pro tanto* the payments and expenditures made by Wm. Ramsay in favor of the plaintiffs; but if the purchase were by A. J. Ramsay for himself alone, and he and his heirs paid all the money, or if made for himself and his father, and the father paid none, or paid what he did with the intention to help his son in life and not take title, then in neither of the cases last supposed, would any declaration of trust be made against the heirs of the son in favor of heirs general of the father.

As the case was under the decree of 1878, the title is adjudged and a sale ordered for division ; and this, before it is found what the father paid, and if anything, with what intent—whether as a gift, or loan, or otherwise—and in such situation the defendants stood concluded. But that decree being put out of the way, it is open to the parties as it ought to be, to have it settled, as to the alleged joint purchase, and then as to the payments if any made by the father, and the intention with which they were made. These essential facts being established either by declaration of the court or on issues to a jury in aid of the court as the judge in his dis-

cretion may direct, the cause will then be in a condition to adjudge upon the title and determine the extent thereof in the rival claimants. And then will be the time to decide whether a division is to be had, and if so, whether in kind or by a sale and division of the proceeds.

After a careful consideration of the points argued before us in connection with the facts in the record, we are of the opinion that it was competent to the judge on the petition to rehear, to set aside the decree of 1876, and that he was warranted in so doing, in order to a final determination of the cause upon the points involved.

No error.                                            Affirmed.